```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Aaron E. Olson

    v.                                        Civil No. 18-cv-478-LM
                                              Opinion No. 2018 DNH 203

United States of America

## O R D E R

On March 9, 2015, Aaron Olson pleaded guilty to four counts of attempted tax evasion in violation of 26 U.S.C. § 7201, and on April 1, 2016, this court sentenced him to serve 60 months in prison. See United States v. Olson, 14-cr-0048-LM (D.N.H. April 1, 2016). He appealed that sentence and the First Circuit affirmed. See United States v. Olson, 867 F.3d 224 (1st Cir. 2017). He now moves pursuant to 28 U.S.C. § 2255 to vacate his sentence, alleging his counsel was ineffective at his sentencing hearing. For the reasons that follow, the court denies Olson's motion.

### Standard of Review

Under § 2255, a federal prisoner may ask the court to vacate, set aside, or correct a sentence that "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). The burden of proof is on the petitioner. Wilder v. United States, 806 F.3d 653, 658 (1st Cir. 2015).

Once a prisoner requests relief under § 2255 the district court must grant an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). If the district court does not hold an evidentiary hearing, the allegations set forth in the petition are taken as true "unless those allegations are merely conclusory, contradicted by the record, or inherently incredible." Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002).

## Background

From 2007 through 2010, Olson owned businesses that invested in commodity, stock and bond markets. By 2010, Olson had obtained approximately $27.8 million from investors, many of whom were family and friends. Unbeknownst to the investors, Olson was not a licensed broker and his businesses were not registered to trade in the state of New Hampshire. Following an investigation by the N.H. Bureau of Securities, Olson shut down his business in New Hampshire, renamed it, and reopened it in Massachusetts. Olson stayed under the regulatory radar, however, by running his newly named business out of his home in New Hampshire, where he and the business remained unlicensed.

By 2011, many of Olson's investments failed, and he was not honest with his investors about his losses. To mislead investors about the true disposition of the funds they placed with him, and to entice them to place more funds with him, Olson created false earnings statements that showed significant earnings on their investments. Olson converted to his own use approximately $2.6 million of the funds invested with him. He also created a Ponzi scheme whereby he would disguise gains made by one investor as "earnings" to another investor, playing a shell game with his investors' money to avoid their suspicion and scrutiny. In addition to his securities violations, Olson attempted to commit tax fraud with respect to income from his investment companies. Despite his best efforts to conceal his fraud, Olson's clients eventually became suspicious and confronted him. In 2012, Olson self-reported and made a full confession to the government.

On April 14, 2014, the government filed an information charging Olson with four counts of attempted tax fraud for each of the years 2007 through 2010. On March 9, 2015, Olson pleaded guilty to all four counts in a plea agreement brought pursuant to Fed. R. Crim. P. 11(c)(1)(C).[1] In his plea agreement, Olson

---

[1] Almost a full year passed between the filing of the charges (April 2014) and Olson's "c-plea" (March 2015). During that time, Olson had entered into an earlier plea agreement while represented by his original counsel. Also during that time,

3

agreed to a stipulated range of 42 to 60 months and to pay restitution to all the victims of his investment-related fraud.

After his March 9 plea hearing, the court scheduled Olson's sentencing hearing for June 26, 2015.  By joint request of Olson and the government, the court continued Olson's sentencing hearing numerous times throughout the next year.  During that year, the court held four conferences with Counsel #2 and the government.  At each conference, Counsel #2 successfully sought a further continuance of the sentencing hearing to give Olson more time to sell his family's granite quarry and make a substantial contribution toward restitution.  At these conferences, Counsel #2 provided a detailed oral summary of Olson's ongoing efforts to sell the quarry.  At no time did the government express doubts regarding the sincerity of Olson's efforts in this regard.

Eventually, the conferences came to an end and the court scheduled the sentencing hearing for February 16, 2016.  Shortly before that sentencing hearing, however, Olson retained new counsel ("Counsel #3") who filed a motion to continue the

---

Olson sought, and was granted, at least two continuances of his sentencing hearing to permit him and the government time to finalize the terms of a proposed restitution order.  In October 2014, Olson retained new counsel ("Counsel #2") and, with the government's assent moved to withdraw his original plea.  The court granted that motion.  Counsel #2 negotiated the terms of Olson's c-plea.

4

sentencing hearing so that he could review the voluminous discovery records and get up-to-speed on the complex financial issues underlying Olson's fraud. The court granted that motion, and the sentencing hearing took place on April 1, 2016. Despite Olson's good faith efforts, he was not able to sell his quarry prior to his sentencing hearing.

At his sentencing hearing, Olson's advisory sentencing guideline range was 37 to 46 months, and the parties jointly recommended a sentence of 42 months—the middle of the guideline range and the low-end of the stipulated range. The court sentenced Olson to 60 months—an upward variance and the high end of his stipulated range. Following a restitution hearing on October 31, 2016, where Olson was again represented by a newly retained attorney, the court ordered restitution in the amount of almost $23 million.

## Discussion

Olson's § 2255 claim is based on the alleged ineffectiveness of Counsel #3 at Olson's sentencing hearing. When a § 2255 petition is based on ineffective assistance of counsel, the petitioner "must demonstrate both: (1) that 'counsel's performance was deficient,' meaning that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment'; and

5

(2) 'that the deficient performance prejudiced the defense.'" United States v. Valerio, 676 F.3d 237, 246 (1st Cir. 2012) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

Under the deficiency prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation marks omitted). Under the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Failure to satisfy either the deficiency or prejudice prong defeats an ineffective-assistance-of-counsel claim. Id. at 700.

Olson claims that Counsel #3 was ineffective for failing to advocate for him at his sentencing hearing with respect to the issue of remorse. During the hearing, the court asked whether there was evidence of Olson's remorse during the lengthy two-year time frame (2014-2016) that Olson remained out on bail pending his sentencing hearing. Olson claims that there were numerous acts of remorse that he performed during that time

frame that his counsel could have articulated for the court. Olson claims that his counsel's failure to prepare adequately for the sentencing hearing rendered counsel unaware of these acts of remorse and therefore ineffective. Although Olson could have detailed these acts of remorse orally for the court during his allocution, Olson contends that he was too nervous to provide the necessary detail.

Under the first prong of Strickland, Olson argues that his counsel was deficient both for not knowing the details related to Olson's remorse and failing to articulate those details for the court. Under the second prong, Olson argues that—had counsel not been deficient in this regard—the court would have given Olson a less severe sentence. Olson fails to carry his burden on both prongs.

First, with respect to his deficiency argument, Olson fails to rebut the "strong presumption" that his counsel's performance fell within the "wide range of professional assistance" of counsel. Strickland, 466 U.S. at 689. Indeed, Olson's arguments fall well short of the mark. One of the most challenging tasks for a defense counsel at a sentencing hearing is to argue in favor of a lighter sentence without in any way appearing to minimize his client's criminal conduct. Counsel #3 performed this task with skill. Although the court ultimately found that a 60-month sentence was fair and just, there is

7

simply no way the court could characterize Counsel #3's advocacy in favor of a 42-month sentence as deficient. Counsel #3 brought numerous arguments in support of a 42-month sentence to the attention of the court, including a Guidelines-based policy argument regarding Olson's cooperation. And, although Counsel #3 did not detail every act of Olson's remorse related to the quarry, he summarized Olson's remorse during that time frame (and before) in an effective and persuasive manner. In short, even assuming the truth of Olson's allegations, the court finds that the performance of Counsel #3 at Olson's sentencing hearing was more than adequate and certainly did not fall below any objective standard of reasonableness.

Although Olson's failure to meet the first prong of Strickland is dispositive, the court will also address his prejudice argument. Like his deficiency claim, Olson's prejudice argument is unpersuasive. Olson claims that, but for his counsel's failure to articulate his acts of remorse, he would have received a lesser sentence. Olson's brief details the missing evidence of remorse in 23 separate paragraphs. See doc. no 1-1 at 20-25 (Olson's memorandum); doc. no. 1-2 (Olson's affidavit). Even assuming that Counsel #3 had brought all of that evidence to the attention of the court, Olson cannot show that the result of his sentencing hearing would have been any different.

The vast majority of these separately described acts of remorse concern Olson's efforts to sell his quarry. Olson's argument fails to recognize that the court was already aware of acts of remorse related to attempts to sell his quarry. Prior to sentencing, the court held four conferences with Counsel #2 and the government and, at each, Counsel #2 provided the court detailed updates about Olson's ongoing efforts to sell his quarry. By the time of Olson's sentencing hearing, therefore, the court was well aware of Olson's extensive efforts to sell his quarry and use the profits to pay restitution to his victims.

At the sentencing hearing, the court was interested in hearing evidence of Olson's remorse unrelated to the quarry during the two-year time frame (2014-2016) that the court had continued his sentencing hearing and permitted him to be released on bail to try to sell his quarry. The point of the court's inquiry was to learn something new about the nature of Olson's remorse. Had Counsel #3 attempted at the sentencing hearing to summarize details related to the attempted sale of the quarry—as Olson argues he should have—such an attempt would have been nonresponsive and unpersuasive. Moreover, a large portion of the evidence Olson faults Counsel #3 for not bringing to the court's attention occurred outside the relevant two-year time frame. Any reference to that evidence would have been

9

nonresponsive. Thus, the vast majority of the evidence that Olson now contends Counsel #3 should have presented to the court would have been either immaterial to the court's decision or nonresponsive to the court's central inquiry.

Moreover, some of the remorse evidence Olson contends Counsel #3 should have brought to the court's attention would have been aggravating rather than mitigating. For example, Olson contends that Counsel #3 should have alerted the court to the fact that Olson "traded his Cadillac for a less expensive, used Acura" to generate funds for the victims.[2] Trading in one luxury car for another typifies an attitude toward remorse that Olson's victims decried. The two victims who testified at the sentencing hearing addressed their concerns regarding Olson's lifestyle and lack of remorse. One of the victims stated:

> We all know it's public information, the amount of your taxes, . . . and this is just me, I'm going to throw it out there, but you need at least 125,000, 150,000 a year to live. That's a half a million to $600,000 in the last four years. Every one of your victims wonders: Where is the money? Did Aaron do a full disclosure?
>
> You've hired three high-priced lawyers, each of whom has pushed your day of reckoning out. The many hundreds of thousands of dollars, literally hundreds of thousands, if not a million dollars, you've spent on legal fees with our money. You're defending yourself. You just can't make this stuff up.

---

[2]This evidence is also nonresponsive because it occurred in July 2012—before the relevant time frame.

10

> If you were genuinely contrite, you would have served your time and come clean with all of your victims. You would have sat us down and explained everything. We can forgive.
>
> As far as remorse, I haven't seen -- you hide in your house. You go out at night. You go out -- your lifestyle has not changed. And rumor has it you bought a new pickup.
>
> . . .
>
> You're supposed to make an honest and real disclosure of all your finances, and the big question is how are you financing your attorneys, lifestyle. You still live in that big opulent house in the hill. So that's -- I mean, that's a huge question for us.

Doc. no. 68 at 28-29, 31-32. A second victim stated:

> What really hurts us is that you've never come to apologize for what you've done. Instead, we've watched you sink our money into lawyers and other things while many of us continue to scrape through what we have earned or have left.
>
> When you've done this, it appears that you are not remorseful but enjoy the love of nice things more than doing what's right.

Id. at 21-22.

Finally, in one paragraph of his brief, Olson describes having placed small amounts of his personal funds into an account set aside for investors. Doc. no. 1-1 at 23-24. Although Olson does not specify a time frame for this evidence of remorse, the court will assume it occurred during the relevant time frame. While this evidence would

11

have been responsive, the court is not persuaded that it would have made any difference in the court's sentencing decision. See Scarpa v. Dubois, 38 F.3d 1, 8-9 (1st Cir. 1994) (holding that defendant alleging ineffective assistance of counsel carries burden of persuasion on both prongs of Strickland).

For all of these reasons, the court finds Olson's arguments under both prongs of Strickland unavailing.

### Request for Evidentiary Hearing

Olson requests an evidentiary hearing in support of his § 2255 motion, but no hearing is necessary to dispose of this case. "[A] § 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief . . . ." United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993) (internal quotation omitted). Olson is not entitled to an evidentiary hearing as a matter of right; instead, it is Olson's burden to establish that a hearing is necessary to decide his motion. Id. at 225. However, the record and the pleadings, as well as this court's familiarity with this case, enable the court to decide Olson's motion without an evidentiary hearing. As the court has explained, Olson offers only allegations or facts that, even if true, would

not entitle him to relief under § 2255.  Thus, the court denies Olson's request for an evidentiary hearing.

## Conclusion

For the foregoing reasons, Olson's motion for relief under 28 U.S.C. § 2255 (doc. no. 1) is denied.  Because Olson has not made a substantial showing of the denial of a constitutional right, the court declines to issue a certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c)(2); Rule 11(a), Rules Governing Section 2255 Proceedings.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

October 15, 2018

cc: Counsel of Record